CHAS. C. SHAEFFER, TRUSTEE, ET AL. V. J. C. SMYTH ET AL.

No. 6306. Decided February 13, 1935.
Motion for rehearing overruled March 20, 1935.
(78 S. W., 2d Series, 935; 79 S. W., 2d Series, 847.)

*Goggans & Allison, Zellner Eldridge, Goggans & Keith, James F. Gray* and *R. W. Gray,* all of Dallas, for plaintiffs in error.

On propositions discussed: Lewis v. Powell, 205 S. W., 737; Johnson v. First Natl. Bank, 198 S. W., 990, writ of error denied; Seamans Oil Co. v. Guy, 115 Texas, 93, 276 S. W., 424 (Com. App.).

*Dabney, Goggans & Ritchie, D. A. Ritchie,* all of Dallas, *Goree & Rice* and *Allen & Gambill,* all of Fort Worth, for defendants in error.

MR. JUDGE GERMAN delivered the opinion of Commission of Appeals, Section A.

This suit was by Charles C. Shaeffer, Trustee, and Pan-American Life Insurance Company, against Ward-Harrison Mortgage Company and others. The Pan-American Life Insurance Company and the Ward-Harrison Mortgage Company are the real parties and will be referred to as the Insurance Company, or plaintiff in error, and the Mortgage Company, or defendant in error.

The suit had as its foundation what was designated as a guarantee in a contract between Ward-Harrison Mortgage Company, first party, and Pan-American Life Insurance Company, second party, which contract covered transactions by which the Mortgage Company sold to the Insurance Company certain notes and bonds secured by real estate. Various terms of the contract are set out in the opinion of the Court of Civil Appeals as reported in 49 S. W. (2d) 851, but the provision that is determinative of this suit is as follows:

"6. That should there be default for six months after maturity thereof in the payment of either interest or principal on any of said notes or bonds, said first party will re-purchase from said second party such notes or bonds so in default, paying said second party in cash with interest to date of such re-purchase, or by the substitution of other notes or bonds acceptable to said second party both as to security and rate of interest."

Under this contract the Mortgage Company assigned to the Insurance Company note of Alexander Wisely and wife in the sum of $8000.00, containing certain provisions with reference to interest and maturity of note in the event of default in the payment of interest. Default was made in the payment of interest on January 1, 1925, and the Insurance Company declared the principal note due and payable.

As we think the parties have themselves in effect construed their contract and indicated the proper decree which should be rendered, it is appropriate to set forth the substance of certain communications which passed between them. On March 6, 1925, the Insurance Company advised the Mortgage Company by letter than the Wisely note, "under guarantee as per contract entered into on the 2nd day of February, 1920," was in default on account of the failure to pay the installment of interest due January 1, 1925. This letter concluded as follows:

"Please advise just what your attitude will be toward pro-

tecting the Pan-American on this loan under the contract with the Ward-Harrison Mortgage Company."

On March 11, 1925, the Mortgage Company replied as follows:

"I am in receipt of your letter of the 6th inst. stating that the interest on the above loan due and payable January 1, 1925, is now delinquent. I have made inquiry with respect to this borrower and am advised that he has been adjudged a bankrupt, and has been discharged and has moved away. In view of this situation, I would suggest that foreclosure suit be instituted in the District Court of Tarrant County, Fort Worth, Texas, where your note is payable, obtain judgment and have the property sold.

"I find that your Mr. Louis B. Trenchard made an inspection of this property at some date prior to the final closing of the loan and reported that he found it satisfactory. At that time, values were somewhat inflated in Lamar County, but his report will no doubt show a valuation of or to exceed $16,000.00. And it would therefore seem that there should be no loss sustained, but probably a profit to you under a sale."

On March 21, 1925, the Insurance Company wrote the Mortgage Company, calling attention to the default of the maker of the note, advising that it had been declared matured, giving the amount of same with interest, and requesting a remittance; with the statement that upon receipt of remittance the loan would be reassigned.

On March 24, 1925, the Mortgage Company replied, stating that it did not think the Insurance Company had a right under the contract to make this demand for repurchase at that time. This letter contained the following statement:

"It was my suggestion to you in a recent letter that foreclosure proceeding would be the proper course to pursue, and I am still of that opinion. *It could then be readily determined if there was any loss to be sustained by you in the purchase of this loan.*" (Emphasis ours.)

On March 31, 1925, the Insurance Company wrote the Mortgage Company as follows:

"We are forwarding the papers in connection with the above loan to our attorneys in Paris, Texas, with instructions to bring suit to foreclose.

"Whatever loss is sustained by the company in this transaction will be brought to your attention for settlement."

Thereafter the Insurance Company forwarded to the Mortgage Company a renunciation of the trusteeship, which was

executed and returned to the Insurance Company and in this correspondence the Mortgage Company was advised that the Insurance Company would proceed with the foreclosure.

On June 11, 1925, the Insurance Company wrote the Mortgage Company with reference to the Wisely loan and another loan as follows:

"On account of default in the above loans, purchased by this company from the Ward-Harrison Mortgage Company, we have been forced to start foreclosure proceedings in both of the above loans.

"This letter is to advise you that although we have been forced to foreclose on the said loans, the Pan-American Life Insurance Co. does so with full reservations of all of its rights under the contract entered into between the Ward-Harrison Mortgage Co. and the Pan-American Life Insurance Company with respect to the former's guarantee of all principal, interest, etc., in connection with each loan sold by the Ward-Harrison Mortgage Co. to the Pan-American Life Insurance Co."

The first foreclosure sale was on July 2, 1925, at which sale one Weichsel bid the sum of $8,100.00 and the property was struck off to him. Weichsel declined to make good his bid, and it is shown that in making this bid he was acting for the Mortgage Company, presumably, if not admittedly, to boost the bidding. The second sale was made on August 4, 1925, when the Insurance Company bid in the property for $2500.00 and received a deed.

The Insurance Company in this action sought judgment of the Mortgage Company for the amount of the Wisely note, with interest and attorney's fees, and for the additional sum of $247.56 paid for delinquent taxes; and in connection with such relief tendered to the Mortgage Company a deed of conveyance to the property purchased at the foreclosure sale. In the alternative, it proposed to reconvey the property,* allow a credit of $2500.00 on the indebtedness, and sought a judgment for the balance of the indebtedness, principal, interest, attorney's fees, and taxes paid.

Judgment in the trial court was against the Insurance Company and this judgment was affirmed by the Court of Civil Appeals. As we conclude that the Court of Civil Appeals decided the case upon a wrong theory, it is not necessary to discuss the holdings which it made.

The obligation of the Mortgage Company, while not tech-

---

*See opinion on rehearing, post, p. 516.

nically a guarantee, is in the nature of one. Default was made in the payment of the interest on the Wisely debt on January 1, 1925, and it was shortly thereafter matured. While liability on the part of the Mortgage Company to repurchase the indebtedness could not then be enforced, nevertheless it potentially existed as an absolute obligation, subject to become unconditional six months after the maturity of the note. Notice of the default and maturity of the note to the Mortgage Company was all that was required. No demand was necessary, because the Mortgage Company knew of the default and knew that its obligation became unconditional at the end of the six months period of default. While the demand of March 21, 1925, and the previous notice of March 6, 1925, did not make the obligation of the Mortgage Company immediately enforcible, nevertheless the giving of such notice by the Insurance Company was commendable. It afforded the Mortgage Company an opportunity to take the necessary steps, in anticipation of its liability, to secure itself against same and to do whatever might be most advantageous to it under the circumstances. Being advised of the default, and knowing that the maker of the note was bankrupt, and had been discharged, it necessarily knew that the default would continue and at the end of the six months period its liability would become absolute. Being thus previously advised, it had the option of repurchasing the note, or of having the Insurance Company proceed to sell the security, in order to prevent depreciation thereof, credit the amount of the indebtedness, and then itself pay the balance. In view of the admitted insolvency of the maker of the note and the probability of fluctuation in the value of the security, we think the Insurance Company had a right, without in any manner subjecting itself to estoppel by election of remedies, to assume the burden of foreclosing the lien before the end of the six months period default, invest itself with title to the property, and be in position to surrender the security, along with the unsatisfied balance of the indebtedness, to the Mortgage Company immediately upon the performance by the Mortgage Company of its contractual obligation to repurchase. Loeb v. Stern, 198 Ill., 371, 64 N. E., 1043. It appears to us therefore that instead of there being an election on the part of the Insurance Company, there was an election on the part of the Mortgage Company. In the letter of March 24, 1925, there was not only a request on the part of the Insurance Company to foreclose on the property, but the added statement: "It could then be readily determined if there was any loss to be

sustained by you in the purchase of this loan." It is obvious that the Insurance Company considered this as a promise that if the foreclosure were had, the Mortgage Company would respond on its contract for any difference between the amount of the note and interest and the amount received for the property at foreclosure sale. This is obvious from the letter of March 21, 1925, in reply to the one requesting the foreclosure, wherein it is stated: "Whatever loss is sustained by the company in this transaction will be brought to your attention for settlement."

In view of the manifest understanding of the situation on the part of the Insurance Company, the Mortgage Company assisted in the matter of resignation of the trustee, with full knowledge that the foreclosure was to be made. In addition it seems to be unquestioned that at the first sale Weichsel, as representative of the Mortgage Company, boosted the bidding on the part of the Insurance Company to $8000.00, evidently for the purpose of minimizing the amount of liability on the part of the Mortgage Company under the contract.

■ The parties have therefore selected and ratified the method by which their contract is to be performed. Obviously, it seems to us, plaintiff in error is not entitled to attorney's fees. Defendant in error contracted to repurchase the note with interest. If plaintiff in error retains the property it is not entitled to recover taxes paid thereon or the cost of foreclosure. Quite otherwise, however, if defendant in error elects to repurchase the note and take over the security. In that event plaintiff in error is unquestionably entitled to recover the note with interest to date, all taxes paid on the property to date, and the actual expenses of foreclosing the deed of trust, not including attorney's fees.

■ Without holding that difference between the note with interest and the price at which the property was sold at foreclosure would in all cases be a conclusive measure of damages, yet in this instance we think it is the proper measure, because it occurs to us that the parties mutually understood that the sale was being made for the purpose, among other things, of determining the loss to be sustained. Loeb v. Stern, supra. In any event, if such had not been the intention of the defendant in error, and the property was of value in excess of the indebtedness, as contended by it on the question of measure of damages, it had full opportunity to bid upon the property, as it did in the first instance, and have it bring its real value. If

the value of the property is equal to the amount of the indebtedness, as found by the Court of Civil Appeals, defendant in error cannot be injured by the decree herein rendered, in view of the alternative relief accorded it.

The judgment of the Court of Civil Appeals and of the trial court are hereby reversed, and judgment is here rendered in favor of plaintiff in error, Pan-American Life Insurance Company, against defendant in error, Ward-Harrison Mortgage Company, for the value of the Wisely note, with interest to date of final settlement, subject to a credit of $2500.00 as of date August 4, 1925, and for all costs of suit; and plaintiff in error will duly assign to defendant in error the Wisely indebtedness.*

The trial court is hereby directed that if, within thirty days after mandate is filed in that court, defendant in error, Ward-Harrison Mortgage Company, shall pay to plaintiff in error, Pan-American Life Insurance Company, the amount of the Wisely note with interest, together with all taxes paid upon the property to date of final settlement, and the actual costs incurred in making the foreclosure sale, not including attorney's fees, together with all costs of this litigation, to require the plaintiff in error to reconvey to defendant in error the property purchased at foreclosure sale, and to reassign the Wisely indebtedness; otherwise the judgment above declared will be enforced.

The judgment as to all other defendants is affirmed.

Opinion adopted by the Supreme Court February 13, 1935.

### ON MOTION FOR REHEARING.

In motion for rehearing our attention is called to the fact that in stating the relief sought by the Insurance Company we stated as follows: "In the alternative, it proposed to reconvey the property," etc. We should have said, "retain the property," and the opinion is corrected in that respect.

We also change the language of the decree so that the same shall read as follows:

"The judgment of the Court of Civil Appeals and of the trial court are hereby reversed, and judgment is here rendered in favor of plaintiff in error, Pan-American Life Insurance Company, against defendant in error, Ward-Harrison Mortgage Company, for the amount of the Wisely indebtedness, with interest to date of final settlement, subject to a credit of $2500.00

---

*See opinion on rehearing, following on this page.

as of date August 4, 1925, and for all costs of suit; and plaintiff in error will duly re-assign to defendant in error without recourse the unpaid balance of the Wisely indebtedness, without the deed of trust security for the payment of same; and the cause is remanded in order that the trial court may enter judgment in accordance herewith."

The judgment in all other particulars remains unchanged and all motions for rehearing are overruled.

Opinion adopted by the Supreme Court March 20, 1935.